UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JOY DEBONO,

                Plaintiff,

      -against-

CAMBRIDGE WHO'S WHO PUBLISHING, INC., and
RANDY NAROD, and DEB MORRISSEY as aiders and
abettors,

                Defendants.
----------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★   APR 09 2012   ★

LONG ISLAND OFFICE

**COMPLAINT**

Jury Trial Demanded

**SUMMONS ISSUED**

CV 12 1725
FEUERSTEIN, J
LINDSAY, M

Plaintiff, JOY DEBONO, through her attorneys, LEEDS MORELLI & BROWN, P.C., alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This is a civil action based upon Defendants' violations of the Americans with Disability Act, and the New York State Executive Law, the Human Rights Law, § 290 et seq; as well as any other cause of action that can be inferred from the facts set forth herein.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

1

4. All statutory prerequisites have been met. Plaintiff filed a Charge of Discrimination with the New York State Division of Human and cross filed with the EEOC. Plainitff was issued a right to sue letter on March 2, 2012.

## PARTIES

5. Joy Debono ("Debono") was and still is a resident of Nassau County, State of New York.

6. Defendant, Cambridge Who's Who Publishing, Inc. ("Cambridge"), is a business corporation organized under the laws of the State of New York, with a principal place of business in Nassau County, New York.

7. Defendant, Randy Narod ("Narod"), at all times hereinafter mentioned, was and still is an agent, servant, supervisor, and/or employee of Cambridge and was engaged in the course of her duties, responsibilities, and/or employment. Narod was the President and participated and aided and abetted in the acts of discrimination and retaliation alleged herein.

8. Defendant, Deb Morrissey ("Morrissey"), at all times hereinafter mentioned, was and still is an agent, servant, supervisor, and/or employee of Cambridge and was engaged in the course of her duties, responsibilities, and/or employment. Morrissey participated and aided and abetted in the acts of discrimination and retaliation alleged herein.

## FACTS

9. On January 5, 2009, Debono began working for Cambridge as a saleswoman.

10. Upon commencement of her employment at Cambridge, Debono was assigned to New Membership Sales.

11. In December 2009, Debono was promoted to UPSALES, which included the opportunity to increase her sales compensation.

12. Shortly after beginning in UPSALES, Debono became sick with urological problems and, as a result, she took time off to be examined by various doctors.

13. Pursuant to company policy, Debono provided Cambridge with medical documentation.

14. Upon Debono's return to work, Cambridge removed her from UPSALES and returned Debono to New Membership Sales because of her absences and sickness.

15. As a result of her demotion, Debono lost the opportunity to earn more money.

16. From 2009 to 2010, Debono had multiple pre-melanomas surgically removed and provided relevant medical documentation to Cambridge.

17. On September 14, 2010, while working Debono began experiencing numbness in her left and right arms, her upper teeth and jaw, her heart began beating fast and her head throbbed with pain.

18. Debono's supervisor, Yona Block ("Block"), acknowledged that Debono did not look well and Debono's other supervisor, Lorraine Standish ("Standish"), also expressed her concern that Debono looked as if she were in extreme pain.

19. Block told Debono to report to Human Resources ("H.R.") and inform them that she needed to leave because she was ill.

20. Debono followed Block's instructions and told Morrissey that she needed to leave because she felt sick.

21. Immediately upon leaving Morrissey's office, Debono visited her doctor who noted that Debono's blood pressure was abnormally high and suggested she go to the hospital.

22. Debono's doctor wrote her a note explaining that Debono had been examined that day.

23. On September 16, 2010, Debono continued feeling extremely ill, so she visited another doctor who diagnosed Debono with high blood pressure, and told her that she should not to return to work until September 20, 2010.

24. Accordingly, Debono was out from work from September 15, 2010 until September 17, 2010.

25. Each morning that she was absent, Debono left messages with Michelle Trabucci ("Trabucci") of H.R., informing Trabucci that she was still feeling sick and was receiving medical treatment.

26. Debono also told Trabucci that she would return to work on September 20, 2010 with proper medical documentation.

27. On September 18, 2010, Debono passed out in the shower and continued to feel exceptionally ill.

28. On September 20, 2010, Debono returned to work and completed the necessary forms for H.R. and provided medical documentation for her absences.

29. After completing the paperwork, Debono found a note on her computer telling her to speak with Trabucci before beginning work.

30. Trabucci told Debono that she must sign the Addendum of September 13, 2010 (the "Addendum") which stated that any employee who took unaccrued time-off would lose all leads for the upcoming week.

31. Debono signed it under duress and dated it September 20, 2010.

32. The Addendum is a policy which has a disparate impact on disabled persons as it is more likely to have an adverse impact on disabled persons than otherwise healthy persons.

33. On September 20, 2010, Debono returned to work and realized that she did not have any new leads.

34. Block informed Debono that she would not be given any leads that week because Debono was sick a few days the previous week, so she could not receive any leads for that week.

35. Debono complained that she was being treated unfairly because she was legitimately sick and that she had all the proper documentation.

36. Block replied that she should speak to Narod, President of Cambridge; however, Narod was busy and Debono could not speak to him so Debono wrote a note to H.R. requesting that she have the opportunity to speak with Morrissey about her situation.

37. On September 21, 2010, Morrissey advised Debono that she could see her in her office that day at 5:20 p.m. However, Morrissey was called into a meeting with Narod at the time of their appointment and Debono did not speak with Morrissey.

38. Later that night, Debono emailed a complaint to Morrissey detailing her concerns about

the Addendum's disparate impact on her, as a person suffering from a disability.

39. Additionally, Debono requested a reasonable accommodation by requesting flexibility in the Addendum policy, given her disability and the documentation thereof.

40. Debono also sent a copy of the email to Narod who replied, via email, that he would speak with Debono and H.R. the next day.

41. On September 22, 2010, Debono returned to work expecting to speak with Narod and H.R. regarding her concerns about being sick and not being given any leads.

42. However, Trubicci told Debono that Morrissey wanted to see to her.

43. Morrissey explained that Narod had called her the previous night and told Morrissey that she accepted Debono's email as her letter of resignation, even though no language in the email could reasonably be construed as a resignation.

44. Morrissey also informed Debono that her medical insurance would be terminated on September 30, 2010.

45. Debono told Morrissey that the letter was not a resignation, but nonetheless Morrissey informed her that Trabucci would escort her to her desk so she could pack her things and leave the premises permanently.

46. Additionally, under the rules outlined Cambridge's Employment Handbook, to effectuate a resignation, a letter of intent must be signed, an exit interview must be conducted, and a discussion of final paychecks must occur. None of these occurred, as Debono did not resign.

47. Accordingly, Debono was terminated on September 22, 2010 in retaliation of her complaints of discrimination based on disability and requests for accommodation.

48. On September 27, 2010, Cambridge held a meeting where it was announced that the company would no longer penalize employees for being sick by withholding leads.

## AS AND FOR A FIRST CAUSE OF ACTION

49. As described above, Defendant Cambridge, has taken adverse employment actions against Plaintiff (including demotion, discriminatory distribution of leads, and termination), which were motivated, in part, upon Plaintiff's disability, record of disability, and/or Defendants' perception of her as being disabled, as well as retaliation for her and complaints of discrimination and/or her requests for a reasonable accommodation, in violation of the Americans with Disability Act and the New York State Executive Law § 296.

50. Defendants maintained a policy which created disparate impact based on disability.

51. As more fully set forth above, the individual Defendants, aided, abetted, incited,

compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6).

WHEREFORE, Plaintiff demands judgment against Defendants, were applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, reinstatement, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated:     Carle Place, New York
           April 4, 2012

LEEDS, MORELLI & BROWN, P.C.
*Attorneys for Plaintiffs*
One Old Country Road
Carle Place, N.Y. 11514
(516) 873-9500

_____
RICK OSTROVE